IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CHAD BARRY BARNES,<br><br>    Appellant,<br><br>  v.<br><br>KRISTIN KIMO HENRY,<br><br>    Appellee. | Case No. 19-cv-00212-DKW-RT<br><br>Bankr. No. 14-01475 |
| CHAD BARRY BARNES,<br><br>    Appellant,<br><br>  v.<br><br>KRISTIN KIMO HENRY,<br><br>    Appellee. | Case No. 19-cv-00213-DKW-RT<br><br>Bankr. No. 14-01475 |
| CHAD BARRY BARNES,<br><br>    Appellant,<br><br>  v.<br><br>SEA HAWAII RAFTING, LLC,<br><br>    Appellee. | Case No. 19-cv-00215-DKW-RT<br><br>Bankr. No. 14-01520 |

# ORDER AFFIRMING BANKRUPTCY COURT

In these consolidated appeals, Appellant Chad Barry Barnes appeals the orders of the U.S. Bankruptcy Court for the District of Hawai'i (1) denying Barnes' motion to stay discharge and lift protective order and (2) discharging Appellee Kristin Kimo Henry.[1] Although Barnes was directed to clearly identify the issues being appealed and provide legal support for the purported errors in the Bankruptcy Court's rulings, Barnes does neither. Nonetheless, having reviewed the arguments that Barnes does make, the Court finds no error in the Bankruptcy Court's rulings, and thus, AFFIRMS the same in full, as explained below.

## I.    Procedural Background[2]

On April 24, 2019, Barnes filed a notice of appeal, appealing an order of the Bankruptcy Court denying his motion to stay discharge and lift protective order in Henry's bankruptcy proceeding ("the First Henry Bankruptcy Appeal"). On the same day, Barnes filed a notice of appeal, appealing an order of the Bankruptcy Court denying the exact same motion filed in the bankruptcy proceeding of Sea Hawaii Rafting, LLC (SHR and, with Henry, "Appellees") ("the SHR Bankruptcy

---

[1]Pursuant to Local Rule 7.1(c), the Court elects to decide these consolidated appeals without a hearing.
[2]The Court notes that there is a lengthy procedural background to the underlying bankruptcy and admiralty cases between the parties. While the Court does not recite that history herein, the Court is cognizant of the history and, to the extent relevant, the same is mentioned in the "Discussion" section below.

2

Appeal"). Also on the same day, Barnes filed a notice of appeal, appealing the order of discharge entered in Henry's bankruptcy proceeding ("the Second Henry Bankruptcy Appeal" and, with the SHR and First Henry Bankruptcy Appeals, "the Bankruptcy Appeals").

Because the orders being appealed in the Bankruptcy Appeals involve common questions of law and fact, and because consolidation would produce savings in time and effort, while causing no inconvenience, delay, or expense, the Court consolidated the Bankruptcy Appeals. *See* Dkt. No. 5. In the Court's order of consolidation, Barnes was instructed to clearly identify the issue or issues being appealed, clearly explain how the Bankruptcy Court purportedly erred with respect to each issue, and provide legal support for the Bankruptcy Court's purported error.

On August 16, 2019, Barnes filed his opening brief. Dkt. No. 10. Thereafter, Appellees each filed their respective response briefs. Dkt. Nos. 12-13. On November 5, 2019, Barnes filed an errata reply brief. Dkt. No. 15.[3]

---

[3]The Court notes that the deadline to file a reply brief was November 4, 2019. Dkt. No. 9. However, both Barnes' errata reply brief and original reply brief were filed on November 5, 2019. Dkt. Nos. 14-15. Nonetheless, the Court elects to consider the errata reply brief as timely filed. In addition, the Court notes that, in his brief, Henry asserts certain purported procedural shortcomings with Barnes' opening brief. *See* Dkt. No. 12 at 7-9. The Court does not find any of these matters as justifying striking Barnes' opening brief in this case, as suggested by Henry.

## II. Legal Standard

This Court reviews a bankruptcy court's factual findings for clear error and its conclusions of law and determinations on mixed questions of law and fact de novo. *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005); *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002).

## III. Discussion

Boiled down, these Bankruptcy Appeals essentially concern the Bankruptcy Court's decisions to grant Henry a discharge, and to decline to lift a protective order in Henry's Chapter 13 bankruptcy proceeding. While it is evident that Barnes disagrees with these decisions, little reason and virtually no authority is provided explaining why the Bankruptcy Court erred. This, of course, frustrates the Court's task on appeal. Nonetheless, this Court has attempted to perform that task and, below, explains why none of the arguments Barnes makes are relevant and/or meritorious.

In his opening brief, Barnes argues that the Bankruptcy Court erred in denying his motion to stay discharge because a provision of the Bankruptcy Code prohibits a discharge when a debtor fraudulently transfers property of the estate. Dkt. No. 10 at 4-9. The problem with this argument is that Barnes fails to acknowledge that the cited provision–Section 727(a)(2) of Title 11 of the U.S.

Code–concerns discharges in Chapter 7 cases. Henry, however, received a Chapter 13 discharge, which is subject to an entirely different statutory provision. *See* 11 U.S.C. § 1328. Section 727(a)(2), in other words, is simply not helpful in advancing Barnes' position. If anything, Section 727(a)(2) is only *harmful* to Barnes' position, as it indicates Congress' intent to prohibit a *Chapter 7* discharge when property of the estate is fraudulently transferred, but not to do so in a *Chapter 13* proceeding.

Barnes next argues that the Bankruptcy Court erred in "relying on the fact that Barnes did not appeal Kris Henry's confirmation order…." Dkt. No. 10 at 9. Inspection of the Bankruptcy Court's order, however, does not reflect that the Bankruptcy Court *relied* on the failure to appeal Henry's confirmation order. Instead, the order reflects that the Bankruptcy Court merely stated this event as part of the procedural background. *See* Dkt. No. 1-2 at 3. The failure to appeal Henry's confirmation order simply plays no further role in the Bankruptcy Court's decision to deny the motion Barnes filed.[4]

Barnes also argues that the Bankruptcy Court erred in discharging Henry because Henry was required to personally guarantee an entity's obligations to

---

[4] The Court notes that, with respect to this argument, Barnes appears to bring up certain issues that are "on appeal still." *See* Dkt. No. 10 at 10. To the extent Barnes attempts to raise matters that are pending in other appeals not before the undersigned, the Court does not address them herein.

5

SHR's bankruptcy trustee. Dkt. No. 10 at 10-11. As with many of Barnes' arguments, no further explanation for this stream of words is provided, nor is any effort made to explain why the foregoing results in any of the Bankruptcy Court's determinations, which are pertinent to these Bankruptcy Appeals, being erroneous. This Court, therefore, spends no further time attempting to decipher the purpose of this argument other than to note that it is rejected.

Barnes argues that the Bankruptcy Court erred in discharging Henry because Henry owes a debt excepted from discharge under Section 1328(a)(4). *Id*. at 11-14.[5] More specifically, Barnes argues that Henry owes him maintenance and cure, which Barnes asserts Henry willfully and intentionally denied him. The Bankruptcy Court addressed Section 1328(a)(4), however, and found that it did not apply because Barnes had failed to file a complaint for a determination of the dischargeability of a debt under that provision. Dkt. No. 1-2 at 9-10. With respect to that finding, Barnes' only argument is that the Bankruptcy Court erred because he filed a copy of the complaint used in his admiralty proceeding. Dkt. No. 10 at 11-12. Barnes provides no support for the proposition, though, that

---

[5]The Court notes that, within this argument, Barnes also appears to assert, in one short sentence, that the Bankruptcy Court erred in finding that Section 523(a)(6) of Title 11 did not apply. *See* Dkt. No. 10 at 13. As the Bankruptcy Court stated, though, Section 523(a)(6) does not apply to Chapter 13 cases. Dkt. No. 1-2 at 9. Because Barnes provides no reason for why the Bankruptcy Court erred in reaching this conclusion, the Court rejects any argument that Section 523(a)(6) applies here.

6

simply notifying the Bankruptcy Court of his admiralty complaint meant that Barnes sought to determine the dischargeability of a debt under Section 1328(a)(4). Therefore, because Barnes identifies no error in the Bankruptcy Court's ruling in this regard, the Court rejects this argument.[6]

Barnes next raises an issue concerning the sale of a vessel and staying an order of the Bankruptcy Court. *See* Dkt. No. 10 at 14-22. Barnes appears to conclude the discussion of this issue by arguing that the Bankruptcy Court erred in denying his motion to stay discharge and lift protective order because it prevents him from developing his admiralty case and granting the motion would have allowed other appeals to be resolved. *Id*. at 21. To the extent this argument addresses a finding in the Bankruptcy Court's order–something that is not perfectly evident from the argument itself–it appears to be the Bankruptcy Court's finding that a discharge must be issued to a Chapter 13 debtor provided that certain statutory requirements have been met. *See* Dkt. No. 1-2 at 8-9. Barnes does not address this finding–more specifically, the statutory language upon which the

---

[6]The Court further notes the following with respect to this argument. First, although Barnes asserts that the admiralty court found that the denial of maintenance and cure was intentionally withheld, Barnes fails to cite to any part of the record from that case for the same. Second, it is noticeable that, in making the foregoing assertion, Barnes never actually says that the admiralty court found that *Henry* intentionally withheld maintenance and cure. Third, although Barnes states that the debt in question concerns the *denial* of maintenance and cure, Barnes provides no dates for when the alleged denial (or denials) took place. Arguably, therefore, debt related to the denial of maintenance and cure may not have been discharged. This is because, as the Bankruptcy Court explained, Henry's discharge did not absolve him of his *post-petition* conduct.

Bankruptcy Court relied–at all in his argument. Rather, without any support in the context of a Chapter 13 discharge, Barnes appears to ask this Court to ignore clear statutory language and simply impose a stay because it would be the best thing for Barnes. In light of the clear statutory language of Section 1328, this Court is unprepared to do so.[8]

Barnes next raises an issue that, again, does not evidently appear related to any matter that was before the Bankruptcy Court in these Bankruptcy Appeals. More specifically, Barnes appears to ask whether he can proceed against a third-party entity that has not filed for bankruptcy. *See* Dkt. No. 10 at 22-23. Because this issue has no clear relationship to the Bankruptcy Court's orders in these Bankruptcy Appeals, and Barnes does not point to any specific error in the order related to this issue, the Court declines to further address it herein.

---

[7]Specifically, Section 1328(a) provides that a bankruptcy court *shall* grant a debtor a discharge provided that the statutory requirements have been met. Here, Barnes does not argue that any of the statutory requirements have not been met.

[8]The Court notes that, even taking Barnes' argument in this regard on its own terms, the Court fails to see Barnes' point. As the Bankruptcy Court explained, nothing in the order of discharge protects Henry from his *post-petition* conduct, such as acts he may have committed with respect to a commercial use permit. In addition, while Barnes asserts that the failure to lift a protective stay prevents him from "develop[ing]" his admiralty case, Dkt. No. 10 at 21, that is simply not accurate. All the protective order did was prevent Barnes from using the Bankruptcy Court as a vehicle to avoid discovery rulings in the admiralty case. That is why the protective order says that Barnes cannot use the bankruptcy rules to obtain discovery on any issue *before* the admiralty court. In other words, to the extent Barnes wants to "develop" his admiralty case, he should go before the assigned district court or magistrate judge for that proceeding and ask to do so.

Barnes argues that the order of discharge prevents him from "contacting" Henry even though he has pending legal disputes with him. *Id*. at 23. Although Barnes does not explain how the foregoing assertion, even if true, results in any error on the Bankruptcy Court's part, the Court notes that the order of discharge merely prevents Barnes from prosecuting debts that have been discharged. As this Court has repeatedly stated herein, the Bankruptcy Court clearly told Barnes that the order of discharge "would not protect Mr. Henry from the consequences of his actions regarding the commercial use permit." Dkt. No. 1-2 at 9. The order of discharge in *Henry's* bankruptcy proceeding also does not protect *SHR*, even if Barnes accurately asserts that Henry is representing SHR.

Barnes argues that the Bankruptcy Court erred in threatening sanctions against Barnes and his counsel in the order of discharge. Dkt. No. 10 at 23. As an initial matter, neither the order of discharge nor the order denying Barnes' motion to stay discharge threatened Barnes or his counsel with sanctions. While the order of discharge does state that a violation of the order may result in the payment of damages and attorney's fees to a debtor, this language is directed at creditors in general, not Barnes. *See* Case No. 19-cv-213-DKW-RT, Dkt. No. 1-2 at 1. As for the order denying Barnes' motion, Barnes is merely cautioned that he

9

must observe the discharge injunction once it is entered. *See* Dkt. No. 1-2 at 11.[9]
While sanctions are not directly mentioned, arguably, the same can be inferred. However, this is simply due to the conduct for which warning is being provided: violating the discharge injunction. That is no reason for finding error in the order.[10]

Barnes argues that the Bankruptcy Court erred in denying his request for "vacatur of the Order under Fed.R.Civ.P. 60(b) and Fed.R.Bankr.P. 9024." Dkt. No. 10 at 24. It is not clear to what this assertion pertains, not least because Barnes fails to identify the "Order" he references. Given that none of the orders in these Bankruptcy Appeals concern a Rule 60(b) motion, however, the Court declines to further address this argument.[11]

---

[9]Elsewhere in his opening brief, Barnes asserts that the Bankruptcy Court threatened him with sanctions in "Footnote 2." Dkt. No. 10 at 25. However, footnote 2 of the Bankruptcy Court's order concerns the definition of the word "Boat," not sanctions. *See* Dkt. No. 1-2 at 2 n.2.

[10]The Court notes that, later in his opening brief, Barnes raises further arguments regarding sanctions the Bankruptcy Court purportedly threatened. *See* Dkt. No. 10 at 25-27. Again, the orders at issue in these Bankruptcy Appeals do not threaten Barnes or his counsel with sanctions. Therefore, to the extent Barnes is attempting to litigate matters that concern other appeals, whether pending or resolved, this Court declines to address those matters. As for the orders at issue in these Bankruptcy Appeals, as explained, the Bankruptcy Court either provided a general warning to all creditors or merely cautioned Barnes not to violate the discharge injunction. There was no legal error in the Bankruptcy Court doing so.

[11]In the next paragraph, Barnes asserts that the Bankruptcy Court erred in "suggesting" that Henry was absolved from liability for his actions. Dkt. No. 10 at 24. Again, it is not clear to what this assertion is referring, not least because Barnes cites to no part of the record. Therefore, the Court declines to further address this assertion as well.

Barnes argues that the Bankruptcy Court erred in finding that he could not seek revocation of Henry's Chapter 13 plan confirmation order. Dkt. No. 10 at 27. Barnes further argues that the Bankruptcy Court erred in finding that Henry did not procure his plan confirmation by fraud. *Id*. at 29. Once again, Barnes raises issues that are not pertinent to these Bankruptcy Appeals, as no such findings were made in any of the orders appealed. Therefore, this Court declines to further address these arguments. Barnes also appears to assert error with respect to the protective order, which Barnes appears to contend may have impacted the confirmation of Henry's Chapter 13 plan and/or the admiralty case. *Id*. at 27-29. These assertions, however, are irrelevant as to whether or not the Bankruptcy Court erred in not lifting the protective order to allow Barnes to conduct discovery of Henry's post-petition activities, which is the matter at issue in these Bankruptcy Appeals. *See* Dkt. No. 1-2 at 10. As the Bankruptcy Court stated in that regard, the protective order does *not* prohibit Barnes from conducting discovery with respect to Henry's post-petition activities.

Barnes argues that the Bankruptcy Court erred in denying his motion to stay discharge for lack of evidence. Dkt. No. 10 at 29-30. However, this is, yet again, an inaccurate description of the Bankruptcy Court's order, as nowhere therein did the Bankruptcy Court deny relief due to a lack of evidence. Rather, the

Bankruptcy Court denied relief because Barnes was *legally* not entitled to the relief he sought.

Barnes argues that the Bankruptcy Court erred with respect to findings related to the protective order. *See id*. at 30-31. None of these arguments appear related to the Bankruptcy Court's determination not to lift the protective order, rather they appear related to the underlying determination to grant Henry a protective order. Because that underlying issue is not before this Court in these Bankruptcy Appeals, the Court will not further address this argument other than to reiterate that, if Barnes wanted to conduct discovery in the admiralty case, he should have so moved in that case. In the protective order, the Bankruptcy Court merely said that Barnes could not use the bankruptcy discovery process to re-open discovery related to the admiralty case. This was entirely proper.[12]

Barnes next brings up yet another issue that is not before the Court in these Bankruptcy Appeals. More specifically, Barnes appears to contend that an issue regarding "piercing the corporate veil" has not been tried in his admiralty case due

---

[12]To the extent any of the arguments are related to the decision not to lift the protective order, the Court similarly reiterates that, contrary to Barnes' assertion, the Bankruptcy Court did not "usurp[]" the admiralty court by declining to authorize discovery related to any issue before the admiralty court. *See* Dkt. No. 10 at 32. Put simply, if Barnes wanted to re-open discovery in the admiralty case, he should have so moved in the admiralty case. To the extent Barnes did not, or to the extent Barnes is unhappy with discovery rulings by the admiralty court, that is a matter for the admiralty case, *not* the bankruptcy cases.

to rulings by the Bankruptcy Court. *See id*. at 33-34. None of the arguments related to the foregoing issue have any relationship to issues relevant to these Bankruptcy Appeals. Therefore, the Court does not further address Barnes' arguments in this regard.[13]

Barnes argues that the Bankruptcy Court erred in granting Henry a discharge because Henry caused injury to Barnes while Henry was driving a motor vehicle with a suspended license. *Id*. at 34-35. This argument appears related to the Bankruptcy Court's finding that Section 523(a)(9) of Title 11 did not apply because there was no evidence that Henry was *intoxicated* at the time Barnes was injured. *See* Dkt. No. 1-2 at 10. Barnes' arguments in this regard appear to represent a thorough misunderstanding of precisely what the Bankruptcy Court found in this regard and also of bankruptcy law. Contrary to Barnes' apparent arguments, the Bankruptcy Court did not make any findings under State law, nor did the Bankruptcy Court find that Barnes may or may not have been entitled to relief under State law for the injuries he suffered. Rather, the Bankruptcy Court interpreted *bankruptcy* law–Section 523(a)(9)–and found that *bankruptcy* law did not provide for an exception from the discharge under the circumstances of this

---

[13]Notably, Barnes appears to assert that he is entitled to a "modified scheduling order" in his admiralty case. *See* Dkt. No. 10 at 33. So it is clear, Barnes cannot use these, or any, Bankruptcy Appeals to obtain a modified scheduling order in his admiralty case. Instead, Barnes must move the admiralty court for relief in his admiralty case.

case. Barnes makes no attempt to challenge those findings. Nor could he, given that the language of Section 523(a)(9) clearly does not apply here in light of the facts presented.

Barnes argues that the Bankruptcy Court erred in "relieving Henry from the consequences of a material and possibly criminal violation of the automatic stay." Dkt. No. 10 at 35. It appears that this argument relates to Henry's alleged conduct with respect to a commercial use permit. *See id*. at 35-36. Once again, however, Barnes entirely ignores what it is the Bankruptcy Court stated in its relevant order. Rather than "relieving" Henry from the consequences of his actions, the Bankruptcy Court explicitly stated that "the discharge would not protect Mr. Henry from the consequences of his actions regarding the commercial use permit." Dkt. No. 1-2 at 9. As such, the Court suggests that Barnes read the actual words of the Bankruptcy Court's orders in the future before filing appeals containing arguments such as this.

Barnes argues that the Bankruptcy Court erred in denying him the ability to conduct "current" discovery against Henry and one of Henry's businesses. Dkt. No. 10 at 36. To the extent this is a continuation of Barnes' many other misplaced arguments regarding discovery, the Court observes that it is far from clear precisely what discovery to which Barnes refers. If Barnes is referring to *any and*

*all* discovery against Henry and his business entities that did not file for bankruptcy, the Bankruptcy Court clearly did not prohibit such discovery.[14]

Barnes argues that the Bankruptcy Court erred in not sanctioning Henry for allegedly false statements Henry made to the State of Hawaiʻi. Dkt. No. 10 at 36-37. Yet again, though, this is not a matter relevant to these Bankruptcy Appeals, as it has nothing to do with whether Barnes' motion to stay discharge and lift protective order should have been granted or denied or whether Henry should have received a discharge.[15][16]

Finally, Barnes argues that the Bankruptcy Court erred in finding that Henry's conduct did not injure SHR's bankruptcy estate and creditors. *Id*. at 37-38. As an initial matter, the Bankruptcy Court did *not find* that SHR was uninjured by Henry's conduct. Instead, the Bankruptcy Court noted that there may be a "serious question" whether Henry's conduct harmed SHR's bankruptcy estate. Dkt. No. 1-2 at 8 n.22. The foregoing question is *not a finding* of the

---

[14]In addition, as the Bankruptcy Court explained, to the extent Barnes wishes to conduct "current" discovery of Henry and his business entities, Barnes should seek to do so through his admiralty case. *See* Dkt. No. 1-2 at 11.

[15]Notably, it is not even clear whether the matter of sanctioning Henry was before the Bankruptcy Court in the orders pertinent to these Bankruptcy Appeals.

[16]The Court notes that Barnes spends the entirety of his reply brief explaining why this Court should consider matters that he acknowledges are "beyond the [four] corner[s]" of the orders relevant to these Bankruptcy Appeals. *See* Dkt. No. 15 at 2. Not one of those reasons justifies this Court expanding the scope of these Bankruptcy Appeals. The Court further notes that, in his reply brief, Barnes appears to contend that this Court should review rulings of the admiralty court. *See id*. at 8, 11. No authority to do so is offered, and any such request is thus rejected.

Bankruptcy Court. In addition, the Court observes, once again, that Henry's conduct in this regard is *post-petition* conduct. As the Bankruptcy Court explained, Henry's bankruptcy discharge does not protect him from the consequences of his post-petition activities. Therefore, to the extent Henry's post-petition conduct has resulted in the loss of an asset belonging to SHR, and, as Barnes asserts, that lost asset has "tremendous value," then, assuming that the law otherwise allows it, Barnes may pursue his legal rights related thereto.

**IV. Conclusion**

For the reasons set forth herein, the orders of the Bankruptcy Court relevant to these Bankruptcy Appeals are AFFIRMED. Specifically, the Court AFFIRMS the Bankruptcy Court's (1) Order Denying Barnes' Motion to Stay Discharge and Lift Protective Order in Case No. 14-1475, (2) Order of Discharge in Case No. 14-1475, and (3) Order Denying Barnes' Motion to Stay Discharge and Lift Protective Order in Case No. 14-1520.

IT IS SO ORDERED.

Dated: December 23, 2019 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge